# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

**ROBERT EVAN WEBB,**

    Plaintiff,

vs.                                                  Case No. 5:03cv272-MCR/WCS

**COMPATH, INC.**

    Defendant.

_____/

## **FIFTH REPORT AND RECOMMENDATION**

    This case has been remanded to the undersigned after a default judgment was entered against Defendant Compath, Inc., in favor of Plaintiff.  Docs. 63, 64.  United States District Judge Casey Rodgers referred this case for a determination of the amount of damages that should be awarded Plaintiff.  Doc. 68.  Plaintiff was directed to come forward with evidence showing the amount and extent of his injuries so that a proper award of monetary damages could be determined.  Docs. 59, 63, 67, 68, and 69.  Plaintiff has now done so.  Docs. 79, 71.

In the first Amendment complaint,[1] Plaintiff brought claims against Defendant under the False Claims Act, 31 U.S.C. § 3730(h), and the Major Fraud Act (a criminal statute), 18 U.S.C. § 1031(h).  The relief available under both provisions is identical.[2]  Thus, the more applicable civil statute (§ 3730(h)) will be utilized in determining the damages which should be awarded Plaintiff.[3]  Moreover, the False Claims Act provision should be utilized because no criminal prosecution has been shown to have been initiated against Compath.  See Boeing North American, Inc. v. Roche, 298 F.3d 1274, 1288, n.16 (Fed. Cir. 2002) (stating "a private party's cause of action under the Major Fraud Act is predicated on participation in a criminal prosecution that was initiated by the government against the contractor.").[4]  Without that nexus to a criminal prosecution, Plaintiff is only entitled to damages under the civil statute.  Boeing North American, Inc., 298 F.3d at 1288, n.16.  Indeed, at least one court has held that Congress did not

---

[1] Plaintiff's requests to file subsequent amended complaints were denied.  Docs. 40, 48, 51, 57, 59, and 63.

[2] "The Major Fraud Act contains an anti-retaliation provision that is identical to that of the False Claims Act for all purposes relevant to this case."  Moore v. Cal. Inst. of Tech. Jet Propulsion Lab., 275 F.3d 838, 845 (9th Cir. 2002), citing 18 U.S.C. § 1031(h).

[3] Plaintiff is not entitled to the "windfall" that would result if he were awarded damages on both claims for the identical conduct.  The purpose in this statute is clear: "to provide an aggrieved plaintiff with complete compensation for any injuries incurred as a result of the employer's retaliatory conduct, namely 'all relief necessary to make the employee whole.' "  Wilkins v. St. Louis Housing Authority, 198 F.Supp.2d 1080, 1089-1090 (E.D.Mo. 2001), aff'd 314 F.3d 927 (8th Cir. 2002), quoting 31 U.S.C. § 3730(h).  Plaintiff is made whole through damages under one statute.

[4] The Major Fraud Act permits monetary relief to persons who were discharged, demoted, or otherwise discriminated against "by an employer because of lawful acts done by the employee . . . in furtherance of a prosecution under this section (including investigation for, initiation of, testimony for, or assistance in such prosecution)," so long as the employee "was not a participant in the unlawful activity that is the subject of said prosecution . . . ."  18 U.S.C. § 1031(h).

intend to provide for a private right of action under the Major Fraud Act. Pentagen Technologies Intern., Ltd. v. CACI Intern. Inc., 1996 WL 435157, at *11-12 (S.D.N.Y. Aug. 2, 1996), *adhered to on Reconsid. by* Pentagen Technologies Intern., Ltd. v. CACI Intern. Inc., 1996 WL 434551 (S.D.N.Y. Aug. 2, 1996).

Under the False Claims Act, a wronged whistleblower is entitled to "... all relief necessary to make the employee whole." 31 U.S.C. § 3730(h). The statute provides in relevant part:

> Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

31 U.S.C. § 3730(h).[5] Plaintiff has submitted his claims for relief and his justification for those claims. Docs. 70 and 71.

Plaintiff's employment with Compath, Inc. began on October 6, 2001, and ended on December 6, 2001. Doc. 21, p. 20; doc. 70; doc. 71. Plaintiff's salary while at Compath was $75,000.00 per year with an additional stipend of $413.00 per week for meals and other expenses. Doc. 71. Plaintiff accepted another job on January 6, 2002, with Pegasus Satellite making $65,000.00, plus a ten percent annual bonus. *Id.* Therefore, Plaintiff was unemployed for a total of four weeks, or one month. Plaintiff also claims injury to his personal credit when he was left with an American Express bill for $1,297.00. Docs. 70, 71. Plaintiff seeks the following as relief: (1) $5,768.00 in lost wages for the month he was unemployed; (2) $7,000.00 difference between salaries

---

[5] Reinstatement is not possible in this case because the Defendant corporation is defunct.

(based on a two year period); (3) $36,344.00 in lost fringe benefits (calculated at $413.00 per week for 88 weeks[6]); (4) $250,000.00 for damages to Plaintiff's personal credit report.  Doc. 70.  Plaintiff seeks a total amount of $299,112 which he argues should be doubled pursuant to 18 U.S.C. § 1031(h).  Docs. 21, 70.

The difference between Plaintiff's salary at Defendant Compath and his new employer (including the $6,500 annual bonus) is $3,500.00 per year for a total of $7,000.00 for a two year period, just as Plaintiff requests.[7]  Pursuant to 31 U.S.C. § 3730(h), Plaintiff is entitled to two times the amount of back pay for a total of $14,000.00.

Plaintiff also seeks $5,768.00 in lost wages for the one month he was employed.  This is compensable.  That amount should also be doubled for a total of $11,536.00.

Plaintiff has demonstrated that he was to receive $413.00 each week in employee "fringe benefits" for meals and other expenses.  Doc. 70.  Such benefits are appropriately included in a "back pay" award in Title VII cases and should be included here.  See Crabtree v. Baptist Hosp. of Gadsden, Inc., 749 F.2d 1501, 1502 (11th Cir. 1985), cited in Munoz v. Oceanside Resorts, Inc., 223 F.3d 1340, 1348 (11th Cir. 2000).  "Because the object of the backpay provisions of Title VII is to make employees whole for losses suffered on account of unlawful discrimination," fringe benefits should be included in backpay awards under False Claims Act cases where the purpose is the

---

[6] Plaintiff does not explain why he has chosen 88 weeks here.  However, since the claim for backpay for two years is reasonable, the court need not question this aspect of the claim.

[7] Compath did not go out of business until after this two year period ended so, in the absence of evidence from Compath, it would be reasonable to conclude that Plaintiff would have been employed by Compath for this two years had he not been terminated.

same – "to make the employee whole."  Crabtree, 749 F.2d at 1502, *citing* Albemarle Paper Co. v. Moody, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975); Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 252 (5th Cir. 1974); 31 U.S.C. § 3730(h).

Review of Plaintiff's first amended complaint, however, reveals that Plaintiff was to receive a "payment of 413.00 per week to cover meals and incidentals."  Doc. 21, p. 6.  Payment of this sort usually occurs when an employee is required to travel away from home, but typically is not be needed for work done at home.  Plaintiff has not shown that this payment was intended to cover meals and incidentals other than for travel away from home.  Plaintiff alleged in the first amended complaint that a "rotation" to Korea would last "approximately ninety days.  Doc. 21, p. 6.  Thus, Plaintiff's request for $36,344.00 representing $413.00 per week for 88 weeks should be reduced by the applicable period of time he would have been at "home" and not in Korea.  The calculation should also be determined based on Plaintiff's statement in the amended complaint that a rotation lasts approximately three months.[8]  Over the course of two years employment, that figure is 52 weeks which amounts to $21,476.00.[9]  Doubling that figure brings the total for lost fringe benefits to $42,952.00.

---

[8] This figure was reached by assuming that if Plaintiff's employment had not been terminated, and he arrived in Korea on October 6, 2001, then Plaintiff would have returned home three months later on January 6, 2002.  Plaintiff would have then returned to Korea on April 6, 2002, for three months, and so forth.  Those calculations provide two trips to Korea per year, each trip lasting 13 weeks in length.

[9] This figure has not been reduced by the weeks Plaintiff worked in Korea because Plaintiff alleged in the complaint that he "never received any of his outstanding per diem payments."  Doc. 21, p. 16.

Plaintiff additionally seeks compensation for damage to Plaintiff's personal credit in the amount of $250,000.00.  Doc. 70.  The statute allows "compensation for any special damages sustained as a result of the discrimination," and Plaintiff is entitled to an award.  However, Plaintiff has submitted a copy of the credit report showing an account balance of $1,297.00 overdue more than 120 days on an American Express bill which was referenced in the first amended complaint.  Doc. 21, pp. 6, 16-18; doc. 71.  From allegations of the complaint it appears that most of the charges on this credit card were business expenses of Defendant for which Plaintiff was not reimbursed despite his repeated requests.  Plaintiff is at least entitled to reimbursement for the entire amount.  However, there has been no showing that this adverse credit item caused Plaintiff any real harm, that is, that he lost a business opportunity for lack of good credit.  Thus, the total amount of special damages should be $1,297.00.  This is not backpay, and is not subject to doubling.  Neal v. Honeywell, Inc., 191 F.3d 827, 832 (7th Cir. 1999).

Finally, Plaintiff is entitled to "litigation costs" in bringing this suit as part of his "special damages."  31 U.S.C. § 3730(h); Hammond v. Northland Counseling Cntr., Inc., 218 F.3d 886, 894 (8th Cir. 2000).  Plaintiff requested such in the amended complaint, doc. 21, p. 24, although he did not present a factual basis for these costs in his statement, doc. 71, or response to the prior court order, doc. 70.  At any rate, judicial notice is taken that Plaintiff submitted the $150.00 filing fee for this case when he filed the initial complaint.  Doc. 1.

The total amount to be awarded Plaintiff, thus, consists of the following: back pay of $14,000.00; lost wages of $11,536.00; lost fringe benefits of $42,952.00; special damages of $1,297.00; and litigation costs of $150.00. Plaintiff should be awarded $69,935.00 in total damages pursuant to 31 U.S.C. § 3730(h).

In light of the foregoing, it is respectfully **RECOMMENDED** that the Clerk be directed to enter final judgment in favor of Plaintiff and against Defendant in the amount of $69,935.00.

**IN CHAMBERS** at Tallahassee, Florida, on May 20, 2005.


      s/    William C. Sherrill, Jr.
      **WILLIAM C. SHERRILL, JR.**
      **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.